IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEALTHPORT CORPORATION,  CV. 06-419-PK

        Plaintiff,  FINDINGS AND
RECOMMENDATION

v.

TANITA CORPORATION OF AMERICA,
an Illinois Corporation,

        Defendant.

PAPAK, Magistrate Judge:

    Healthport Corporation ("Healthport") filed this lawsuit against Tanita Corporation of America ("Tanita") on March 27, 2006, alleging patent infringement related to their competing body composition monitors. On May 26, 2006, Tanita filed two counterclaims alleging Healthport web site advertisements violate the false advertising prong of the Lanham Act and common law unfair competition. (# 11.) Tanita requested money damages along with other

Page 1 - FINDINGS AND RECOMMENDATION

forms of relief on its counterclaims.[1]

On August 7, 2006, Tanita filed a motion for summary judgment on Healthport's patent infringement claims. (# 18.) The district court adopted this court's Findings and Recommendation (# 61) and granted summary judgment in favor of Tanita and dismissed Healthport's patent claims. (# 70.)

Pending before the court are the parties' cross motions for summary judgment related to Tanita's counterclaims. Tanita seeks summary judgment on its claim for false advertising brought under the Lanham Act.[2] (# 99.) Healthport Corporation ("Healthport") seeks summary judgment on both of Tanita's counterclaims – false advertising and common law unfair competition. (# 100.) For the reasons set forth below, Tanita's motion for summary judgment should be granted and Healthport's denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 516 U.S. 1171 (1996). In

---

[1]Tanita filed an Amended Answer and Counterclaims on February 13, 2008, which abandoned its request for money damages.

[2]Tanita did not move for summary judgment on its common law unfair competition claim. At oral argument, however, Tanita indicated that its unfair competition claim rises and falls with its Lanham Act claim.

Page 2 - FINDINGS AND RECOMMENDATION

evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the non-moving party. Fed. R. Civ. P. 56; *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Summary judgment, of course, may not be granted where the court finds unresolved issues of material fact, even in situations where the cross motions allege that no disputed facts exist. *Id.*

## FACTUAL BACKGROUND

A.  Healthport Web Sites

Healthport maintains two web sites, which promote or are part of an offering of its web-based services. One web site targets healthcare professionals and offers "an integrated and turnkey Obesity Management & Preventive Medicine System designed to be prescribed by physicians."[3] (The "CyberCare Plan" web site.) The second web site addresses employers and healthcare benefits providers and offers an online "health risk assessment and individualized 12-week care plan aimed specifically at reducing [an] employee's identified health risk factors."[4] (The "Health-e-Changes" web site.) Anyone with an Internet connection can access these web

---

[3] www.cybercareplan.md/what.htm

[4] www.healthechanges.com/benefits.cqs

Page 3 - FINDINGS AND RECOMMENDATION

sites. The sites do not require a login or password to view them.[5]

Tanita's false advertising claim asserts two alleged misrepresentations that appear on the CyberCare Plan and Health-e-Changes web sites. The first describes a Healthport body composition monitor. The other promotes the credentials of Richard Wooten, Healthport's president and chief technology officer.

B.   The Body Composition Monitor Advertisement

Both of the Healthport web sites contain descriptions of Healthport's ElectroLipoGraph metabolic analyzer ("ELG"), a body composition monitor. Healthport touts the ELG as "the only metabolic analyzer patented in the United States and abroad for unequaled accuracy and validity in the prediction of human body composition." Healthport goes on to state that the "patented accuracy of the ELG is backed by the largest study on body composition analyzers ever conducted, including more than 750 subjects from a wide demographic population."

To substantiate its claims regarding the ELG, Healthport relies on two studies performed by the University of Southern California. Neither study provides a head-to-head comparison of the ELG with any other body composition monitors. In addition, neither study describes the ELG as having unequaled accuracy. Both studies describe the ELG as an accurate method of measuring body composition. One study adds a note that the ELG is used to measure patients while they are lying down.

---

[5] Although Healthport asserted that the CyberCare site contained a login page, testimony by Mr. Wooten and Dr. Libke indicated otherwise and this Court was able to access both sites without a login or password. This Court finds that the question of the existence of a login page is not a disputed material fact. "The opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 265 (9th Cir. 1991).

Page 4 - FINDINGS AND RECOMMENDATION

Healthport owns two patents related to the ELG. Healthport relies on these patents to substantiate the claims it makes in the ELG advertisement. However, neither patent suggests that Healthport's ELG has unsurpassed accuracy or validity as compared to other body composition monitors.

C. <u>Richard Wooten Credentials</u>

Richard Wooten serves as Healthport's president and chief technology officer. Both the Healthport web sites offer information about Healthport's management team. That information included statements that Mr. Wooten "received his M.S. degree from Oregon Graduate School of Health Sciences and a B.S. in Biology from Portland State University." Healthport apparently removed Mr. Wooten's credentials from the CyberCare Plan web site in the Summer of 2007, but as of November 2007 the credentials continued to appear on the Health-e-Changes web site. Mr. Wooten admits that he has not earned a college or post graduate degree in any discipline.

## ANALYSIS

### A. Common Law Unfair Competition

Healthport moves for summary judgment on Tanita's common law unfair competition claim. Healthport asserts that Oregon courts follow federal law when deciding common law unfair competition claims. However, the arguments presented by Healthport address the Oregon Unfair Trade Practices Act, which is not relevant here. Accordingly, Healthport's motion for summary judgment as to the common law unfair competition claim should be denied.

### B. False Advertising

Both parties move for summary judgment on Tanita's Lanham Act false advertising claim. Healthport argues that it is entitled to summary judgment because Tanita lacks standing to

Page 5 - FINDINGS AND RECOMMENDATION

bring this claim or because Tanita cannot establish causation and injury. Tanita argues that summary judgement in its favor is appropriate because it meets the standing requirements and because the undisputed material facts sufficiently prove its false advertising claim.

**1. Lanham Act Standing**

The Lanham Act confers standing on "any person who believes that he or she is or is likely to be damaged" by misrepresentations in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). To establish standing for a false advertising claim brought pursuant to the Lanham Act, a party must allege: "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005); *Barrus v. Sylvania*, 55 F.3d 468, 469-70 (9th Cir. 1995). Thus, a plaintiff has standing where the alleged misrepresentation could divert business from the plaintiff to the defendant. *See Coastal Abstract Serv. Inc. v. First Am. Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (standing exists where defendant's false statements sought to divert business away from competitor); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (standing exists for false advertising where misrepresentations about product quality could theoretically draw a consumer away from competitor's product); *see also Barrus*, 55 F.3d at 470 (stating that false advertising discussion in *Waits* is not dicta).

Although Healthport asserts in its motion for summary judgment that no evidence indicates that Tanita and Healthport are competitors, Healthport's own statements suggest otherwise. In its Answer to Tanita's counterclaims, Healthport asserted as its tenth affirmative defense that "Healthport is privileged to lawfully compete with Defendant [Tanita] in market

Page 6 - FINDINGS AND RECOMMENDATION

segments." Richard Wooten testified in his deposition that Tanita and Healthport are competitors. Dr. Alfred Libke, Healthport's chairman and CEO, testified that Healthport's ELG competes with Tanita products. Thus, even viewed in the light most favorable to Healthport, ample undisputed evidence demonstrates that Healthport and Tanita are competitors.

Healthport's Motion for Summary Judgment also argues that because it derived no revenue from its web-based CyberCare Plan that Tanita cannot prove it has suffered a competitive injury.[6] However, Healthport's arguments miss the mark. Healthport confuses Tanita's allegations as challenging the CyberCare Plan itself, rather than the description of the ELG and of Mr. Wooten's credentials that are contained within the CyberCare Plan and Health-e-Changes web sites.

The description of Healthport's ELG body composition monitor inherently draws comparisons with competing products, which include Tanita products, and has the potential of diverting business away from Tanita. Both companies offer body composition monitors, and a sale of one of the competing products would result in a denial of a sale for the other. Those facts satisfy the standing requirements for false advertising. Accordingly, this Court rejects Healthport's assertion that Tanita lacks standing for its Lanham Act claim.

### 2. Lanham Act False Advertising Claim

To prevail on its false advertising claim under the Lanham Act, Tanita must establish that: (1) Healthport made a false statement of fact in a commercial advertisement; (2) the statement deceived or has the tendency to deceive a substantial segment of its audience; (3) the

---

[6] Healthport presented no facts concerning the Health-e-Changes site. However, Dr. Libke's deposition testimony indicated that the Health-e-Changes and CyberCare Plan sites had similar content and served a similar purpose.

Page 7 - FINDINGS AND RECOMMENDATION

false statement is material in that it is likely to influence the purchasing decision; (4) Healthport caused the false statement to enter interstate commerce; and (5) Tanita has been or is likely to be injured as a result of the false statement. 15 U.S.C. § 1125(a)(1)(b); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

### a. Element One – Falsity in a Commercial Advertisement

The Lanham Act proscribes misrepresentation in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Representations constitute commercial advertising for Lanham Act purposes if they are 1) commercial speech; 2) by a defendant who is in commercial competition with the plaintiff; 3) for the purpose of influencing consumers to buy the defendant's goods or services and 4) sufficiently disseminated to the relevant purchasing public. *Coastal Abstract Serv.*, 173 F.3d at 735. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980). A representation is false if a claimant can show that the statement was literally false, false by necessary implication, or literally true but likely to mislead or confuse consumers. *Southland Sod Farms*, 108 F.3d at 1139.

Healthport opposes Tanita's Motion for Summary Judgment on grounds that the statements on the CyberCare plan web site are not commercial advertising or promotion. Neither party disputes that the description of the ELG monitor and of Mr. Wooten's credentials are commercial speech. Healthport is in commercial competition with Tanita. The parties do not dispute that the descriptions appeared on the CyberCare Plan and Health-e-Changes web sites, and that Healthport created those sites to sell health-related services. Finally, the CyberCare Plan and Health-e-Changes sites are accessible to the public. Therefore, the Court finds that the

Page 8 - FINDINGS AND RECOMMENDATION

representations constitute commercial advertising for the purposes of the Lanham Act.

The Court further finds that the representations are false. With respect to the statements regarding Mr. Wooten's credentials, the record demonstrates that they are literally false. Healthport has admitted that Mr. Wooten's credentials were manufactured, and Mr. Wooten himself testified that he has not received any college or graduate degrees.

The second statement at issue is Healthport's claim that the ELG is "the only metabolic analyzer patented in the United States and abroad for unequaled accuracy and validity in the prediction of human body composition." Although this statement gives rise to three possible interpretations, the undisputed facts demonstrate that each interpretation is literally false. First, if the statement means the ELG is the only *patented* metabolic analyzer in the United States and abroad, that is a literally false statement. The testimony of both Mr. Wooten and Dr. Lipke revealed that other patented body composition analyzers can perform the same function.

Second, if the statement means the ELG is patented for unequaled accuracy and validity, or that it is the only one patented for those characteristics, that too is literally false. The parties do not dispute that Healthport did not review patents for body composition analyzers when it created the ELG advertisement and thus did not substantiate its assertion. More importantly, ELG's patents do not indicate the patents were awarded for "unequaled accuracy and validity."

Finally, if the ELG statement means the ELG is unsurpassed in accuracy and validity when compared to other body composition analyzers, Healthport cannot substantiate that claim. Healthport's principals testified they did no comparative or tests to verify their product was "unsurpassed in accuracy and validity." Although Healthport claims to rely on studies to substantiate their claims, those studies simply do not support Healthport's assertions. The studies

Page 9 - FINDINGS AND RECOMMENDATION

merely conclude that the ELG is accurate. However, the studies do not suggest the ELG may be more accurate than competing products, nor do the studies compare the ELG with other body composition analyzers. *Southland Sod Farms*, 108 F.3d at 1139 (plaintiff can establish literal falsity if the tests, even if reliable, do not establish the proposition asserted by the defendant).

The statements at issue constitute commercial advertising and are literally false. As a result, Tanita satisfied the first element of its false advertising claim.

### b. Elements 2 and 3 – Deception and Materiality

Healthport argues that Tanita must prove through the use of consumer surveys or market research that consumers have actually been deceived by the advertisements. Healthport is wrong. Courts may presume consumer deception and reliance if the defendant made an intentionally false statement regarding the defendants' product, even if the statement entailed "little overt reference to plaintiff or plaintiff's product." *Harper House Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989) (applying presumption to claim that product cost less than similar products and offered more features); *see also Southland Sod Farms*, 108 F.3d at 1145 ("[T]here need not be a direct comparison to a competitor for a statement to be actionable under the Lanham Act.").

Earlier cases required the expenditure of substantial funds by the defendant before a court would presume consumer deception and reliance. *See Harper House Inc.*, 889 F.2d at 209; *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986). Courts imposed this condition "because the misleading statements may not have reached and deceived a substantial portion of consumers unless the defendant spent enough funds to disseminate the statements widely." *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 259 n.2 (9th Cir. 1995). In the

Page 10 - FINDINGS AND RECOMMENDATION

case of online advertising, however, a defendant need not spend substantial funds to reach a wide audience. *See Allen v. The Ghoulish Gallery*, No. 06-371, 2007 U.S. Dist. LEXIS 86224 at*29-30 (S.D. Cal. Nov. 20, 2007). More importantly, courts have found that non-comparative false statements may support a claim for injunctive relief if the claim is material. *See Allen*, 2007 U.S. Dist. LEXIS 86224 at*29-30 (S.D. Cal. Nov. 20, 2007) (non-comparative false statement regarding length of time in business was material and sufficient for injunctive relief); *see also Societe Civile Succession Richard Guino v. Beseder Inc.*, No. 03-1310, 2007 U.S. Dist. LEXIS 83782 at * 21 (D. Ariz. 2007) (non-comparative false statement regarding authenticity of artwork sufficient for injunctive relief). Deception is material if "it is likely to influence the purchasing decision." *Southland Sod Farms*, 108 F.3d at 1139.

Healthport's description of the ELG monitor as "the only metabolic analyzer patented in the United States and abroad for unequaled accuracy and validity in the prediction of human body composition" is a material, false claim regarding its product. Tanita has submitted uncontroverted evidence that the challenged deception is material. Tanita submitted testimony from health professionals who stated that they seek the most accurate equipment for determining body composition and that claims that a metabolic analyzer is the most accurate or the only one patented for accuracy would influence their purchasing decisions. Healthport did not deny these statements. As a result, this statement gives rise to a presumption of consumer deception and reliance. *See Harper House Inc.,* 889 F.2d at 209.

The false statement regarding Mr. Wooten's credentials present a closer issue, as that statement does not directly relate to a Healthport product. However, Dr. Libke, Healthport's co-founder, testified that his advanced medical degree is important to Healthport's customers.

Page 11 - FINDINGS AND RECOMMENDATION

Thus, even viewing the evidence in a light most favorable to Healthport, the false statement regarding Mr. Wooten's credentials may deceive consumers and influence consumer decisions on whether to purchase the ELG body composition monitor. *See* 5 McCarthy on Trademarks and Unfair Competition § 27:31 (2008) ("Since § 43(a) was passed to protect consumers as well as competitors, the courts are not and should not be reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of provable impact on the plaintiff may be subtle and slight.")

### c. Element 4 – Interstate Commerce

By posting the Wooten and ELG advertisements on their web sites, Healthport caused the false statements to enter interstate commerce. *See, e.g. U.S. v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (an Internet web site "is an avenue of interstate commerce.")

### d. Element 5 – Injury

Healthport argues that Tanita's motion for summary judgment should be denied because Tanita has presented no direct evidence of actual injury. However, "because of the possibility that competitor may suffer future injury, as well as the additional rationale underlying section 43(a) - consumer protection - a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Harper House, Inc.*, 889 F.2d at 211. To the extent that Tanita seeks injunctive relief, it need not demonstrate actual injury to establish a Lanham Act violation occurred here.

The undisputed evidence demonstrates that Healthport's statements concerning the ELG monitor and Mr. Wooten's credentials violate the Lanham Act. Healthport's motion for summary judgement on this issue should be denied. As a result, Tanita's motion for summary judgment

Page 12 - FINDINGS AND RECOMMENDATION

should be granted. Tanita's request for an injunction permanently prohibiting Healthport from disseminating the false statements should likewise be granted. *See* 15 U.S.C. § 1116(a).

### 3. Other Relief Requested

In addition to injunctive relief prohibiting future dissemination of the false statements, Tanita seeks corrective advertising, disgorgement of Healthport's profits, and attorneys fees. A plaintiff who establishes "a violation under section 43(a)" of the Lanham Act can recover the defendant's profits "subject to the principles of equity." 15 U.S.C. § 1117(a). In addition, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.*

"An inability to show actual damages does not alone preclude a recovery" under the Lanham Act. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993). "The preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances." *Southland Sod Farms*, 108 F.3d at 1146. Those circumstances include "the nature of the infringing actions, including the intent with which they were motivated and the actuality, if any, of their adverse effects upon the aggrieved party." *Lindy Pen Co.*, 982 F.2d at 1405.

#### a. The Defendant's Profits

A plaintiff who seeks the defendant's profits as a measure of the plaintiff's own damages need not prove that the defendant's conduct was willful. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (citing *Lindy Pen Co.*, 982 F.2d at 1407-09). In those situations, lost profits serve as "surrogate measures of damages." *Harper*, 889 F.2d at 209 n. 8. Moreover, when an advertisement draws a direct comparison between the competitor's product and the plaintiff's, a court may presume injury because "[a] misleading comparison to a specific competing product

Page 13 - FINDINGS AND RECOMMENDATION

necessarily diminishes that product's value in the minds of the consumer." *McNeilab, Inc. v. Am. Home Products Corp.*, 848 F.2d 34, 38 (2nd Cir. 1988); *see also Southland Sod Farms*, 108 F.3d at 1146; *Harper*, 889 F.2d at 209 n. 8. Where an advertisement does not draw a direct comparison, however, the plaintiff must present evidence of an injury "causally related to the defendant's deception." *Harper*, 889 F.2d at 209-210; *see also Lindy Pen Co.*, 982 F.2d at 1407 - 1409 (plaintiff must prove both the fact and amount of damages).

Alternately, a plaintiff can recover an accounting of the defendant's profits under a theory of unjust enrichment. *See Maier Brewing Co. v. Fleishmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968). The court must consider whether an award of profits is necessary to remove the economic incentive to violate the Lanham Act. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, (9th Cir. 1986) (plaintiff injured by defendant's deliberate sale of counterfeit products); *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982) (plaintiff injured by defendant's deliberate manufacture and sale of counterfeit products); *Maier Brewing Co.*, 390 F.2d at 121 (plaintiff injured by defendant's deliberate use of plaintiff's mark). The Ninth Circuit "has cautioned that an accounting is proper only where the defendant is 'attempting to gain the value of an established name of another.'" *Lindy Pen Co.*, 982 F.2d at 1406 (citing *Maier Brewing Co.*, 390 F.2d at 123). Thus, a willful violation may support an award of profits to the plaintiff but does not require one. *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) (defendant's trade dress infringement sufficiently deterred by the costs of litigation and of modifying product packaging).

Here, the totality of the circumstances does not warrant an award of lost profits damages to Tanita. Assuming this remedy applies to false advertising claims, Tanita has provided no

Page 14 - FINDINGS AND RECOMMENDATION

evidence that Healthport profited from its misrepresentations. *See Playboy Enterprises, Inc.*, 692 F.2d at 1276 (equity-based accounting of profits not appropriate if premised on "potentially fictitious sales from which the defendant derived no economic gain"). Thus, Tanita has not demonstrated that it suffered any actual harm or that Healthport derived any actual benefit that would justify the monetary relief Tanita seeks. Tanita's motion for summary judgment on lost profits damages should therefore be denied.

        b.     **Corrective Advertising**

Corrective advertising may be appropriate to remedy consumer confusion caused by false advertising messages. *See Rhone-Poulend Rorer Pharmaceuticals, Inc. v. Marion Merrell Dow, Inc.,* 93 F.3d 511, 516 (1996) (corrective advertising appropriate where advertisements falsely represented that two prescription medications could be indiscriminately substituted); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 199-200 216 (D.D.C. 1989) (corrective advertising ordered where extensive ad campaign falsely claimed that dog food effective in preventing canine hip dysplasia) *aff'd in part and vacated in part, remanded* 913 F.2d 958; *see also Warner-Lambert Co. v. FTC*, 562 F.2d 749, 771 (1977) (corrective advertising did not violate the First Amendment where ad campaign falsely led consumers to believe product could cure common cold).

Tanita has requested that this Court order Healthport to post corrective advertising on all of Healthport's websites and to send corrective advertising to all of Healthport's "past and/or existing clients." Tanita. however, has presented no evidence that a large audience actually viewed the site or that consumers were and continue to be actually deceived about the nature of Healthport's products. As a result, this Court finds that corrective advertising is not necessary.

Page 15 - FINDINGS AND RECOMMENDATION

*See Adray*, 76 F.3d 984 at 989 (damages for costs of prospective corrective advertising should not exceed the damage to the value of trademark). Tanita's request for corrective advertising should therefore be denied.

### c.     Attorneys Fees

Under 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to the prevailing party in exceptional circumstances, which includes cases in which the act is fraudulent, deliberate, or willful. *See Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). A finding that the defendant acted intentionally "does not necessarily equate" with the malicious, fraudulent, deliberate or willful conduct. *See Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005). Thus, sufficient undisputed evidence must demonstrate that the defendant deliberately intended to deceive consumers. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1217-18 (9th Cir. 2003).

Here, Healthport's liability rests on a presumption of consumer deception and reliance. This Court recognizes that Healthport intentionally made a false statement concerning Mr. Wooten's credentials. However, this statement is only marginally material to consumer purchasing decisions. While the statement regarding ELG accuracy bears more relevance to consumer decisions, the evidence does not demonstrate that Healthport engaged in a concerted effort to deceive consumers sufficient to justify an award of attorneys fees. As a result, Tanita's request for attorney's fees should be denied.

## CONCLUSION

I recommend denying Healthport's motion for summary judgment (# 100), and granting Tanita's motion for summary judgment (# 99). I recommend that an injunctive order be entered

Page 16 - FINDINGS AND RECOMMENDATION

requiring Healthport to immediately remove the ELG and Wooten misrepresentations from its web sites, and which forever prohibits Healthport from publishing any advertising or promotional material that contains representations to the effect that the ELG: (1) is the only patented body composition analyzer or metabolic analyzer in the United States or abroad; (2) is patented for unequaled accuracy and validity; (3) is the only body composition analyzer or metabolic analyzer patented for unequaled accuracy and validity; (4) is unequaled in accuracy and validity as compared to other body composition analyzers. I also recommend that an injunctive order be entered that forever prohibits Healthport from publishing any advertising or promotional material which falsely represents the credentials of Richard Wooten or other principals and employees of Healthport.

Finally, in light of Tanita's indication that its common law unfair competition claim will rise and fall with its Lanham Act claim, this ruling on the parties' cross-motions for summary judgment resolves all the claims in this case. Judgment should be entered accordingly.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 23, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 9th day of April, 2008.

Honorable Paul Papak
United States Magistrate Judge